IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARROWOOD INDEMNITY COMPANY, as successor in interest to LANDMARK, AMERICAN INSURANCE COMPANY, and ARROWOOD SURPLUS LINES INSURANCE COMPANY, formerly known as ROYAL SURPLUS LINES INSURANCE COMPANY, <br><br> Plaintiffs, <br> v. <br><br> ASSURECARE CORPORATION formerly known as ASSURECARE RISK RETENTION GROUP, <br><br> Defendant. | No. 11 CV 5206 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Arrowood Indemnity Company and Arrowood Surplus Lines Insurance Company (together, "plaintiffs") filed a two-count amended complaint against defendant Assurecare Corporation alleging breach of contract (Count I) and seeking a declaratory judgment for renewed collateralization (Count II). Defendant counterclaimed, alleging breach of contract on plaintiffs' part, as well as claims of conversion and negligence, and seeking a declaratory judgment of their own. Plaintiffs have filed the instant motion for summary judgment on all claims and counterclaims. For the following reasons, the court grants plaintiffs' motions for summary judgment as to Counts I and II, as well as all counterclaims.

### BACKGROUND

In 2002, plaintiffs and defendant entered into a reinsurance treaty ("the treaty") for the period of December 1, 2001, to April 1, 2003. In exchange for a premium, defendant provided 100% quota share reinsurance for plaintiffs' insurance contracts that became effective as of

December 1, 2001. Specifically, defendant was responsible for the first $250,000 of plaintiffs' "net liability," as well as a percentage share of "loss adjustment expenses." Under Article II of the treaty, "net liability" is defined as plaintiffs' "gross liability for loss settlement . . . ." Under Article XV of the treaty, "loss adjustment expenses" are defined as "expenses assignable to the investigation, appraisal, adjustment, settlement, litigation, defense and/or appeal of specific claims, regardless of how such expenses are classified for statutory reporting purposes . . . ."

During the treaty's effective period, plaintiffs issued a liability insurance policy to FHC Enterprises, Inc., which insured Greenwood Terrace Nursing and Rehab. Center, L.L.C. ("Greenwood Terrace"). In 2002, Greenwood Terrace was sued following the death of one of its patients and residents, Joseph Mark. Plaintiffs defended Greenwood Terrace in the Mark lawsuit, which eventually settled. Because its policy called for a $1,000,000 liability limit per each "medical incident," plaintiffs paid $1,000,000 of the $1,750,000 settlement. Plaintiffs then billed defendant its portion of the settlement claim, which included the obligation for the first $250,000 of net liability as well as a proportion of loss adjustment expenses. Defendant tendered payment for the billed amount.

Following the settlement of the Mark lawsuit, Greenwood Terrace filed its own suit against plaintiffs for breach of contract, alleging that plaintiffs should have paid a greater portion of the settlement amount because there had been more than one "medical incident" involved in the Mark lawsuit. Greenwood Terrace also alleged bad faith on the part of plaintiffs for their failure to insure Greenwood Terrace fully in the Mark matter. Plaintiffs disputed the claim that multiple "medical incidents" were implicated in the Mark case, but settled the lawsuit with Greenwood Terrace for a further $325,000 on January 4, 2011. Plaintiffs then billed defendant

for its share of the Greenwood Terrace settlement, including the obligation for the first $250,000 of net liability and a proportion of loss adjustment expenses. Defendant contested its obligation to plaintiffs in the Greenwood Terrace lawsuit and refused to pay the billed amount. The parties' agreement allowed plaintiffs to utilize Letters of Credit provided by defendant to "reimburse [plaintiffs] for [defendant's] obligations." Prior to filing this action, plaintiffs drew on a Letter of Credit in the amount of $361,518 in partial satisfaction of the Greenwood Terrace claim.

Plaintiffs then filed the instant suit, alleging breach of contract by defendant for failing to pay the remaining sum of $230,527.76 due in the Greenwood Terrace claim. Additionally, having drawn down the Letter of Credit provided, plaintiffs allege a collateral shortfall under the terms of the treaty and seek an order requiring renewed collateralization. Defendant counters, claiming that the settlement in the Greenwood Terrace lawsuit falls outside the scope of its obligations to plaintiffs. Defendant further filed a six-count counterclaim[1], alleging: (1) that plaintiffs breached the treaty in failing to report the Greenwood Terrace lawsuit in a timely manner; (2) that plaintiffs' actions regarding the Letter of Credit constitute conversion; (3) that plaintiffs were negligent in failing to report the losses incurred in connection with the Greenwood Terrace lawsuit; and (4) seeking a declaratory judgment that the reinsurance treaty does not apply to any losses or liability incurred by plaintiffs resulting from the Greenwood Terrace lawsuit.

## DISCUSSION

**I.      Legal Standard**

---

[1]Two of defendant's counterclaims were dismissed on December 15, 2011. See Arrowood Indem. Co. v. Assurecare Corp., No. 11-CV-5206, slip op. at 1 (N.D. Ill. Dec. 15, 2011).

A movant is entitled to summary judgment under Fed. R. Civ. P. 56(a) when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. The moving party bears the initial burden of pointing out the absence of a genuine issue of material fact. Once the moving party has met that burden, the nonmoving party must go beyond the pleadings and present specific facts showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

## II. Plaintiffs' Summary Judgment Motion and Defendant's Related Counterclaims

Plaintiffs' breach of contract claim centers around the dispute over whether the reinsurance treaty covers the settlement in the Greenwood Terrace matter. The interpretation of this contract is governed by the law of the state of Connecticut.[2] Connecticut law regarding the interpretation of insurance contracts is well-established:

> An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. The policy words must be accorded their natural and ordinary meaning. Under well established rules of construction, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. This rule of construction may not be applied, however, unless the policy terms are indeed ambiguous. Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. Construction of a contract of insurance presents a question of law for the court.

---

[2] Judge Hibbler, to whom this case was previously assigned, ruled on December 15, 2011, that Connecticut law applies to the parties' agreement. See Arrowood Indem. Co. v. Assurecare Corp., No. 11-CV-5206, slip op. at 1 (N.D. Ill Dec. 15, 2011).

Ohio Cas. Ins. Co. v. Dentek, Inc., 283 F.Supp.2d 655, 659 (D. Conn. 2003) (quoting Hansen v. Ohio Cas. Ins. Co., 239 Conn. 537, 687 A.2d 1262, 1264-65 (1996)).

Under Connecticut law, "[t]he elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." Rosato v. Moscardo, 82 Conn.App. 396, 411 (2004) (quoting Bouchard v. Sandberg, 80 Conn.App. 180, 189 (2003)). The first two elements are not in question. Plaintiffs allege that defendant breached the contract by failing to pay amounts owed pursuant to the reinsurance treaty.

Plaintiffs point to two provisions of the treaty to support their argument that the Greenwood Terrace settlement is covered under the terms of the agreement with defendant. First, plaintiffs contend that the settlement monies paid to Greenwood Terrace constitute a "loss settlement" that is covered by the reinsurance treaty. Under Article XIV of the treaty, loss settlements are defined as "individual payments made by the Company in accordance with its Obligations under the subject Policies." Plaintiffs then seek to establish Defendant's liability for such a loss settlement by highlighting another clause of Article XIV, the "follow-the-settlements" clause.

That clause provides that "[a]ll loss settlements made by the Company [plaintiffs], whether under policy terms and conditions or by way of compromise, shall be binding upon the Reinsurer [defendant], and the Reinsurer agrees to pay or allow, as the case may be, its share of each such settlement in accordance with this Contract." This clause is complimented by Article XIII of the treaty, which contains a "follow-the-fortunes" clause, and states that "the liability of

5

the Reinsurer shall follow that of the Company in every case. It is the intent of this Contract that the Reinsurer shall follow the fortunes of the Company in all matters falling under the Contract."

In response to this interpretation of the contract, defendant contends that the settlement does not fall within the scope of the Greenwood Terrace policy, and as such is not a loss payment subject to the follow-the-settlements clause. Defendant argues that plaintiffs, during the course of the Greenwood Terrace lawsuit, maintained that they had satisfied their obligations under the policy that they had issued to Greenwood Terrace and stated that any claim for additional monies related to the Mark settlement was outside the scope of that policy. Because Article IV of the reinsurance treaty between the parties excludes "any losses, or liability for losses, excluded by the Policies," defendant contends that it is not required to pay plaintiffs for the Greenwood Terrace expenditures under the treaty.

The purpose of follow-the-settlements clauses in reinsurance agreements is to "bind[] a reinsurer to accept the cedent's good faith decisions on all things concerning the underlying insurance terms and claims against the underlying insured: coverage, tactics, lawsuits, compromise, resistance or capitulation." See Hartford Acc. & Indemn. Co. v. Argonaut Ins. Co., No. 3:06CV1813 (WWE), 2008 WL 2559440, at *1 (D. Conn. June 23, 2008) (citing British Int'l Ins. Co. v. Seguros La Republica, S.A., 342 F.3d 78, 85 (2d Cir. 2003)); see also International Surplus Lines Ins. Co. v. Certain Underwriting Syndicates at Lloyd's of London, 868 F.Supp. 917, 921 (S.D. Ohio 1994) ("Were the Court to conduct a de novo review of [the reinsured's] decision-making process, the foundation of the cedent-reinsurer relationship would be forever damaged."). To allow the reinsurer to question the underlying settlement would be to relitigate the underlying claim all over again; there would be little incentive for the reinsured to settle its

claims with policyholders. Therefore, once the reinsured enters into a settlement agreement with a policyholder, a follow-the-settlements provision "requires the reinsurer to cover settlements made by the reinsured, as long as they are not fraudulent, collusive or made in bad faith." Hartford Acc. & Indem. v. Columbia Cas. Co., 98 F. Supp. 2d 251, 258 (D. Conn. 2000) (citing Aetna Cas. & Sur. Co. v. Home Ins. Co., 882 F.Supp. 1328, 1346 (S.D.N.Y.1995)).

The burden on the reinsurer to demonstrate bad faith is a significant one: the reinsurer must show "gross negligence, recklessness, [or] bad faith" on the part of the reinsured or that the settlement was not even "arguably" within the scope of the reinsurance contract. Hartford Acc., 98 F. Supp. 2d at 258 (citing Mentor Ins. Co. (U.K.) v. Norges Brannkasse, 996 F.2d 506, 517 (2d Cir. 1993)); see also North River Ins. Co. v. Employers Reins. Corp., 197 F. Supp. 2d 972, 978 (S.D. Ohio 2002) (reinsurers may not "avoid liability by raising policy defenses and objections that were available to the reinsured unless the reinsured pays a settlement that is clearly or manifestly outside the scope of the reinsured's policy coverage").

The underlying claim in the Greenwood Terrace matter concerned the appropriate interpretation of a "medical incident" under the policy issued by plaintiffs. Whether the actions at issue in the Mark lawsuit constituted a single medical incident or multiple medical incidents dictated the limit on the amount of money plaintiffs were required to pay to indemnify the policyholder. Plaintiffs did indeed maintain throughout the Greenwood Terrace litigation and settlement that their liability was limited to $1,000,000 because the Mark lawsuit concerned only one medical incident. Yet, the underlying dispute was one of the policy's coverage, and it was this disagreement that the settlement sought to resolve. Whether plaintiffs' position would be accepted by a court or whether it was prudent to settle the claim is a litigation decision within the

7

discretion of the plaintiffs. As plaintiffs note, their motion for summary judgment in the Greenwood Terrace litigation was denied. Article XIV of the treaty is clear that "[a]ll loss settlements made by the Company . . . by way of compromise" confer liability on the defendant. Absent a showing of bad faith[3], collusion or fraud on the plaintiffs' part in entering into the settlement, plaintiffs' decision to settle a claim regarding a coverage dispute may not be second-guessed by the defendant reinsurer. Here, there is no evidence that plaintiffs entered into the settlement with Greenwood Terrace in bad faith. Therefore, the settlement is covered by the terms of the treaty, and defendant must pay its contractual share of the expense.

Defendant also argues that plaintiffs' settlement with Greenwood Terrace was not a settlement based entirely on the breach of contract claim. The release of claims in the settlement encompassed Greenwood Terrace's claim that plaintiffs acted in bad faith. Whether this portion of the settlement was within the terms of the treaty must also be evaluated.

Plaintiffs claim that $60,000 of the settlement with Greenwood Terrace was allocated to Extra Contractual Expenses, which include bad faith claims, and that this amount was excluded from the amount sought from defendant. There is nothing in the settlement agreement itself, however, that indicates what portion of the settlement was to be allocated to the bad faith claim. Plaintiffs have generated this allocation from their internal accounting, relying on Section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2006)).

Even if the plaintiffs' allocation of $60,000 to the bad faith claim is inappropriate, defendant has not carried its burden to demonstrate that an issue of fact remains as to whether

---

[3]Defendant has not alleged that plaintiffs acted in bad faith by entering into the settlement, but rather that the bad faith cause of action filed by Greenwood Terrace in its lawsuit renders the settlement outside the scope of the treaty, which is a separate contention.

the settlement with Greenwood Terrace concerned matters that were not even "arguably" within the scope of the reinsurance contract. Article XVI of the treaty concerns Extra Contractual Expenses, including bad faith claims, and provides:

> This Contract shall protect the Company [plaintiffs] for 100% of any Extra Contractual Obligations . . . .The term 'Extra Contractual Obligations' is defined as those liabilities not covered under any other provision of this Contract and which arise from the handling of any claim on business covered hereunder, such liabilities arising because of, but not limited to, the following: failure of the Company to settle within the policy limit, or by reason of alleged or actual negligence, fraud or bad faith . . . in the preparation of the defense or in the trial of any action against its insured or Reinsured or in the preparation or prosecution of an appeal consequent upon such action.

While defendant's response brief asserts that "the rather obvious and simple reason that **acting in bad faith** . . . is nowhere included as a '**matter falling under the Contract**[,]'" (emphasis in original), this provision does arguably cover the bad faith claim against plaintiffs. Defendant offers no rebuttal to this argument, simply stating that "there also seems little doubt that the term 'Extra Contractual Obligations' . . . is not applicable to the Greenwood Lawsuit."

Finally, plaintiffs contend that, in addition to the loss settlement payment, defendant is responsible for a proportional share of loss adjustment expenses. As noted above, loss adjustment expenses are defined by the treaty as "expenses assignable to the investigation, appraisal, adjustment, settlement, litigation, defense and/or appeal of specific claims, regardless of how such expenses are classified for statutory reporting purposes . . . ."

Defendant utilizes the same argument to contest its liability for loss adjustment expenses as it did regarding the loss settlement payments: that the Greenwood Terrace claim falls outside the scope of the policy, and as such is not covered by the reinsurance treaty. As stated above, the

9

court rejects this argument because the Greenwood Terrace settlement was a compromise of claims related to the underlying policy.

The court therefore finds that defendant has not demonstrated that a question of fact exists regarding whether the follow the settlements clause or the loss adjustments expenses clause apply to the Greenwood Terrace settlement claim, and awards summary judgment on Count I to the plaintiffs.

### A. Defendant's Counterclaim for Breach of Contract

Defendant counterclaims that plaintiffs breached the terms of the reinsurance contract by failing to provide prompt notice of the pending Greenwood Terrace lawsuit. Defendant cites Article VIII, which requires plaintiffs to:

> furnish the Reinsurer with a report summarizing the Net Subject Written Premium ceded and the Net Subject Earned Premium ceded, less return premium and commission, losses paid, Loss Adjustment Expense paid, monies recovered, and net balance due either party. In addition, the Company [plaintiffs] will furnish the Reinsurer a monthly statement showing the unearned premium, the total reserves for outstanding losses including Loss Adjustment Expense, a breakdown by American Insurance Association catastrophic code numbers for paid and outstanding catastrophic losses and loss adjustment expense and such other information as may be required by the Reinsurer for completion of its NAIC annual statements.

Defendant contends that this clause is a notice provision and that plaintiffs' failure to provide such reports and summaries regarding the Greenwood Terrace claim until after the settlement in 2011 deprived defendant of "the opportunity to limit the costs of defense thereof and to limit its potential financial exposure to Arrowood, if any, under the Treaty."

Notice clauses in reinsurance contracts typically call for "immediate" notice or "prompt" notice of claims. Graydon S. Staring and Christopher P. Staring, Law of Reinsurance § 17:1 (April 2012) (compiling cases). This key language is absent from Article VIII of the treaty; it

simply requires various financial reports. This clause thus appears to be a reporting provision and not the typical requirement that a reinsured provide notice of the existence of potential claims. Under Connecticut law, the "insurer bears the burden of proving, by a preponderance of evidence, that it has been prejudiced by the insured's failure to comply with a notice provision." Arrowood Indem. Co. v. King, 304 Conn. 179, 201, 39 A.3d 712, 725-26 (2012) (overruling Aetna Casualty & Surety Co. v. Murphy, 206 Conn. 409, 538 A.2d 219); see also Sec. Ins. Co. of Hartford v. Trustmark Ins. Co., No. 3:00-CV-1247(PCD), 2002 WL 32500922, at *5 (D. Conn. Sept. 4, 2002) (stating that the law regarding insurance contracts should be consistent with the law regarding reinsurance contracts). Defendant has not alleged any particularized prejudice in this matter beyond the ability to limit the costs of defense in the Greenwood Terrace matter. However, nothing in the reinsurance treaty indicates that defendant had authority to intervene in underlying lawsuits to attempt to limit the costs of defense. Additionally, the Second Circuit, evaluating a similar claim under comparable New York reinsurance law, has held that the loss of the right to associate in the defense of claims that may result from late notice from the reinsured by itself is not sufficient to demonstrate prejudice to the reinsurer. Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co., 4 F.3d 1049, 1068-1069 (2d Cir. 1993).

Even if Article VIII could be characterized as a notice provision, "a [reinsured's] failure to provide prompt notice may entitle the reinsurer to relief without showing prejudice if the [reinsured] acted in bad faith." Unigard, 4 F.3d at 1069 (quotation omitted). Under the Unigard standard, defendant must demonstrate that plaintiffs acted with gross negligence or recklessness in order to prove bad faith. See id. The court, when differentiating common negligence from gross negligence, stated that:

11

> If a [reinsured] has implemented routine practices and controls to ensure notification to reinsurers but inadvertence causes a lapse, the [reinsured] has not acted in bad faith. But if a [reinsured] does not implement such practices and controls, then it has willfully disregarded the risk to reinsurers and is guilty of gross negligence. A reinsurer, dependent on its [reinsured] for information, should be able to expect at least this level of protection, and, if a [reinsured] fails to provide it, the reinsurer's late loss notice defense should succeed. [Id.]

The parties' L.R. 56.1 statements and the appended documentation establish that plaintiffs had routine practices and controls in place, and that financial information was generated by third party adjusters and subsequently billed to reinsurers. Plaintiffs assert that since the Greenwood Terrace lawsuit was handled internally and not by third party adjusters, it was inadvertently excluded from the loss run information routinely provided to defendant. Defendant alleges that this contention is "clearly contrived," and that plaintiffs belatedly advised defendant of the claim once they "[came] up with some clever way to avoid the financial hit [they were] going to take in [the] settlement with Greenwood."

While plaintiffs' failure to advise defendant of the pending Greenwood Terrace lawsuit might have been negligent, it does not, as a matter of law, rise to the level of gross negligence because plaintiffs had procedures in place to generate the required reports and have demonstrated without evidentiary contradiction that their failure to include the Greenwood Terrace claim was inadvertent. Therefore, because the court has found in favor of plaintiffs on their complaint, and has further found that plaintiffs did not breach Article VIII of the treaty, the court grants judgment to the plaintiffs and against defendant on its counterclaim for breach of contract arising from failure to notify.

**B.**     **Defendant's Counterclaim for Conversion**

Defendant claims that plaintiffs' actions in drawing on the Letter of Credit provided constitute conversion, because the amounts drawn were not properly due. Plaintiffs answer that the Greenwood Terrace settlement properly fell within the scope of the reinsurance treaty and that plaintiffs were thus entitled to the amount billed.

Conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights." Aetna Life & Casualty Co. v. Union Trust Co., 230 Conn. 779, 790, 646 A.2d 799, 804 (1994) (citations and quotations omitted). Article XXII of the reinsurance treaty allows plaintiffs to draw on letters of credit to satisfy defendant's obligations "the payment of which is due under this Contract and which has not been otherwise paid." Having found that the Greenwood Terrace claim properly falls within the scope of the treaty, the court finds that payment in the Greenwood Terrace claim was due under the reinsurance contract, that plaintiffs' draw on the letter of credit was not "unauthorized," and therefore the draw did not constitute conversion.

C.     **Defendant's Counterclaim for Negligence**

Defendant claims that plaintiffs' statement that the failure to provide timely reports to defendant concerning the Greenwood Terrace lawsuit was "inadvertent" constitutes a judicial admission of negligence which relieves defendant of any obligation under the treaty.

Under Connecticut law, "[n]egligence occurs where one under a duty to exercise a certain degree of care to avoid injury to others fails to do so." Dean v. Hershowitz, 119 Conn. 398, 407-408, 177 A. 262 (1935). "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 384, 650 A.2d 153 (1994). In evaluating negligence claims that are

13

grounded in contract, Connecticut courts have observed that "the negligent performance of a contract may give rise to an action and recovery in both tort and breach of contract . . . . To sustain an action in both tort and contract, however, on the basis of negligent performance of a contract, the plaintiffs must allege facts and damages sufficient to maintain those causes of actions separately." See Bonan v. Goldring Home Inspections, Inc., 68 Conn. App. 862, 872, 794 A.2d 997, 1004 (2002) (citing Youngset, Inc. v. Five City Plaza, Inc.,156 Conn. 22, 25, 237 A.2d 366 (1968)).

Here, defendant has not pled facts that establish a breach of contract claim and a negligence claim as separate, individual claims. Both rely on the plaintiffs' lack of notice of the existence of the Greenwood Terrace, as required by the contract, to establish a breach. Yet, the duty that defendant cites to give rise to a cause of negligence is the duty established solely by the reinsurance contract. Therefore, defendant has not established a separate negligence claim and summary judgment is awarded to the plaintiffs on this count.

### III. Plaintiffs' Motion for Declaratory Judgment (Count II)

Plaintiffs seek an order requiring defendant to deliver additional collateral, pursuant to the terms of the treaty, to cover the shortfall created by the exhaustion of the Letter of Credit. Article XXII of the treaty requires defendant to:

> fund such reserves in respect of unearned premium, known outstanding losses that have been reported to the Reinsurer and allocated loss adjustment expenses relating thereto, losses and allocated loss adjustment expenses paid by the Company but not recovered from the Reinsurer, plus reserves for losses incurred but not reported, as shown in the statement prepared by the Company (herein after referred to as "Reinsurer's Obligations") by funds withheld, cash advances or a Letter of Credit.

The Article further explains that:

> If the statement shows that the Reinsurer's Obligations exceed the balance of credit as of the statement date, the Reinsurer shall, within thirty (30) days after receipt of the notice of such excess, secure delivery to the Company of an amendment to the Letter of Credit increasing the amount of credit by the amount of such difference.

Having found that the Greenwood Terrace settlement fell within the terms of the treaty, and that plaintiffs properly drew on the Letter of Credit, the court finds that plaintiffs were entitled to further collateral pursuant to Article XXII of the treaty. The court therefore awards summary judgment for Count II to the plaintiffs.

### IV. Defendant's Motion for Declaratory Judgment (Count V)

Defendant also seeks a declaratory judgment that the reinsurance treaty does not apply to any losses or liability incurred by plaintiffs resulting from the Greenwood Terrace lawsuit. Having found that the treaty does apply to the Greenwood Terrace lawsuit, the court awards summary judgment on this counterclaim to the plaintiffs.

### **CONCLUSION**

For the foregoing reasons, the court grants plaintiffs Arrowood Indemnity Company and Arrowood Surplus Lines Insurance Company's motion for summary judgment as to Counts I and II, as well as all counterclaims, and enters judgment as follows: (1) defendant Assurecare Corporation is ordered to pay plaintiffs the balance due under the treaty in the sum of $230,527.75, along with prejudgment interest; and (2) Assurecare Corporation is further ordered to deliver to plaintiff cash or an amendment to the Letter of Credit and to immediately fund the collateral shortfall as set forth by the treaty. Plaintiffs are directed to prepare and file a proposed judgment order consistent with this ruling and computing all amounts due on September 28, 2012, for presentment on October 3, 2012, at 9:30 A.M.

**ENTER:** September 19, 2012

_____
**Robert W. Gettleman**
**United States District Judge**